David P. Billings (11510)
Jason W. Hardin (8793)
FABIAN VANCOTT
95 South State Street, Suite 2300
Salt Lake City, Utah 84111
Telephone: (801) 531-8900
dbillings@fabianvancott.com
jhardin@fabianvancott.com
*Attorneys for the Wohali Concerned Owners*[1]

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF UTAH**

---

| | |
|---|---|
| In re: | Case No. 25-24610 |
| Wohali Land Estates, LLC, | Chapter 11 |
| Debtor | Judge Peggy M. Hunt |

---

**WOHALI CONCERNED OWNERS' MOTION FOR DERIVATIVE STANDING TO**
**ASSERT CERTAIN ESTATE CLAIMS AGAINST**
**EB5AN WOHALI UTAH FUND XV, LP**

Pursuant to 11 U.S.C. §§ 105(a), 503(b)(3)(B), 1103(c), and 1109(b), administrative

claimholders[2] and unsecured creditors the Wohali Concerned Owners respectfully request that the

Court enter an order granting them derivative standing to assert certain claims against EB5AN

---

[1] Collectively, at this time, "**Wohali Concerned Owners**" consist of: General Hancock
Enterprises LA, LLC, a Delaware limited liability company (Owner of Lots #2 and #66); ATOT
Utah, LLC, a Utah limited liability company (Owner of Lot #3 and Airspace Unit #20);
Whitestripe Mountain LLC, a Florida limited liability company (Owner of Lot #6); Ernest T.
Wakabayashi, as Trustee of The Ernest T. Wakabayashi Trust (Owner of Lot #9); Timothy
Kutzkey and Lisa Tenorio-Kutzkey, as Trustees of The Kutzkey Family Trust (Owner of Lot
#11); WFH, LLC, a Wyoming limited liability company (Owner of Lot #12); Gumer C. Alvero
and Amy J. Alvero, as Trustees of The Gumer C. Alvero Revocable Trust (Owner of Lot #28 and
Airspace Unit #15); Whitestripe Wohali, LLC, a Florida limited liability company (Owner of Lot
#56); Brian Ehman, an individual (Owner of Lot #67); Ellen M. Lampert and Mark A. Lampert,
as Trustees of The Ellen M. Lampert Trust (Owner of Lot #70); Benjamin Goldthorp and
Stephanie Goldthorp, individuals (Owner of Lot #71).

[2] [*See* Dkt. Nos. 24, 105, 123, 127, & 152.]

1

Wohali Utah Fund XV, LP ("**EB5**"), either in the adversary proceeding EB5 initially brought against Wohali Concerned Owners, the Trustee, and DGB Enterprises, Inc. (No. 25-02175), or in a new, separate adversary proceeding. Considering the terms of the protective order, the Complaint against EB5 proposed by Wohali Concerned Owners is filed separately under seal. In support of this Motion, Wohali Concerned Owners state:

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over these cases pursuant to 28 U.S.C. §§ 157 and 1334 and the automatic reference of all bankruptcy cases to this Court pursuant to Rule 83-7.1 of the Local Rules. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).[3]

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**BACKGROUND**

3.      EB5 is a Delaware limited partnership with 99 foreign national EB-5 investors as limited partners, who each funded $800,000 of the $79.2 million loan principal amount that underlies EB5's prepetition claim. EB5's limited partners are alleged in the underlying loan agreement to be qualified to participate in a securities offering conducted in connection with the EB-5 Immigrant Investor Program administered under the Immigration and Nationality Act, Section 2039B0(5) *et seq.*, as amended. Messrs. Schoenfeld and Silverman are the general partners of EB5. Also, EB5 has submitted a proof of claim, Claim No. 4-1, in the amount of $86,167,955.67, asserting it has a secured interest in all the Debtor's real and personal property that is senior to all creditors except for the Wohali Public Improvement District and other statutory liens.

---

[3] To the extent that one or more claim, affirmative defense, or counterclaim in Adversary Proceeding No. 25-02175 is a so-called "*Stern* claim," Wohali Concerned Owners knowingly and voluntarily consent to the Bankruptcy Court's entry of a final judgment or order with respect to this adversary proceeding pursuant to Fed. R. Bankr. P. 7008 and *Wellness Internat'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015).

2

4. On November 14, 2025, the Trustee filed his motion seeking approval of post-petition financing from EB5 (the "**Trustee's EB5 DIP Motion**"). [Dkt. # 158] Under the terms of the final order (the "**Final DIP Order**"), the DIP expires on April 30, 2026 [Dkt. # 323].

5. Thanks to objections from Wohali Concerned Owners, the Trustee was able to improve the DIP Financing term sheet to include a nominal "challenge" period during which the Trustee could change his mind and theoretically sue the EB5 Parties. But this challenge period was short, *see* December 4, 2025 Hr'g Tr. [Dkt. # 210] at 57:23–58:6, and the Trustee's investigation unfunded by any budget allocation. *See id.* at 67:6-19. This is not surprising, because the Trustee had already compromised himself from being an aggressive potential plaintiff versus the EB5 Parties by his early agreement to waive the Estate EB5 Claims for no consideration after forming a "preliminary view." *Id.* at 58:23–60:6. Indeed, the Trustee's early agreement *not* to bring the Estate EB5 Claims is consistent with the Trustee's early preference – apparently formed even **before** the Trustee was appointed – to simplify the case by selling the assets of the Debtor in a section 363 transaction at which EB5 would have a right to credit bid.

6. During the evidentiary hearings regarding the Trustee's EB5 DIP Motion, it was revealed that two individuals, Michael Schoenfeld and Samuel Silverman, would actually be funding the money that would fund EB5 as DIP Lender. More specifically, statements were made that those two individuals were the only two members of Wohali Capital Bridge, LLC, those two individuals would fund that entity with the DIP loan amount, and that entity would then fund DIP advances to EB5 pursuant to a revolving credit agreement between EB5 and Wohali Capital Bridge, LLC. Subsequent discovery revealed that Mr. Schoenfeld and Mr. Silverman had obtained an irrevocable proxy from their 99 limited partners and then effectively primed those limited partners without providing them any adequate protection and apparently failed to disclose that

3

these investors were entitled to receive adequate protection from third parties and from Wohali Capital. Another takeaway is that, in light of the irrevocable proxy obtained from the LPs as part of the internal EB5 DIP machinations, Mr. Schoenfeld and Mr. Silverman appear to be completely in control of EB5's actions in regard to this bankruptcy.

7. Pursuant to the terms of the *Interim Order (I) Authorizing the Trustee to (A) Obtain Postpetition Financing from EB5AN Wohali Utah Fund XV, LP, (B) Utilize Cash Collateral, and (C) Pay the Wohali Public Infrastructure Development 2025 Assessment, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* (the "**Interim DIP Order**") [Docket No. 211], the Trustee lodged his simple notice that he intended to challenged the EB5 Loan Claim (as defined in the Interim DIP Order).

8. Also pursuant to paragraph 5 of the Interim DIP Order, on January 30, 2026, Wohali Concerned Owners filed (A) an *Objection to Proof of Claim No. 4-1 [the "**Claim**"] filed by EB5AN Wohali Utah Fund XV, LP* (the "**Objection**") [Dkt. # 287] and (B) a *Motion for the Entry of an Order (1) Estimating the Claim and (2) Valuing the Claim for the Following Purposes: (a) Credit Bidding, (b) Voting on a Chapter 11 Plan, (c) Assisting the Parties in Mediation, and/or (d) Claims Allowance/Administration* (the "**Challenge**") [Dkt. # 286].

9. Through the Objection, Wohali Concerned Owners seek determination that the Claim should be disallowed *entirely* on evidentiary and equitable grounds. In the alternative, the Objection seeks a ruling on the allowed amount of the Claim for certain purposes. In the Challenge, Wohali Concerned Owners seek entry of an order (1) estimating the Claim and (2) valuing the Claim for the following purposes: (a) credit bidding, (b) voting on a chapter 11 plan, (c) assisting the parties in mediation, and/or (d) claims allowance/administration.

10.     The Trustee, EB5, and Wohali Concerned Owners participated in Mediation on March 17 and 18, 2026. While the mediator went home empty-handed, Wohali Concerned Owners understand that negotiations between EB5 and the trustee continued.

11.     Then, according to EB5, "Late in the day on March 27, 2026, EB5 and the Trustee came to settlement terms and, over the weekend, the parties executed a Settlement Agreement and Release of Claims (the '**Agreement**')" [Dkt. #350], which is subject to Court approval pursuant to Bankruptcy Rule 9019.

12.     The Trustee testified under oath yesterday, April 2, 2026, that he signed the Agreement on Sunday, March 29.

13.     Notably, on March 26, 2026, ***before*** **the settlement between EB5 and the Trustee** (under either's view of when that actually occurred), EB5 filed a new Utah state court lawsuit against the Debtor's parent company Wohali Partners, LLC and others, seeking to obtain an interest on what it calls "**critical, irreplaceable assets of the Wohali Project**"–to wit, the three parcels that have been the focus of much discussion in these three proceedings since at least December 2025. Again, one of those parcels, No. CT-382-A-1, is small parcel containing the water pump at the current point of diversion for the water for the Wohali Project's golf course, and a second parcel, No. NS-350-A, contains a large part of the *private* road, Wohali Way, which is the roadway leading from I-80 up to the entrance of the Wohali Project. These parcels are, in fact, strategically critical for the Wohali Project, as all involved seem to know and admit.

14.     The key terms of the Agreement appear to be that the Trustee agrees to drop all the Estate's EB5 Claims in exchange for EB5 (a) starting its credit bid at $65 million and "capping" its credit biding at $89 million; (b) "capping" EB5's deficiency claim to $10 million; (c) EB5 paying $1.8 million at closing in administrative expenses; and (d) EB5 paying $4 million over the

course of three years to allowed unsecured claims (not including the aforementioned $10 million deficiency claim), *provided* the Trustee successfully substantially consolidates Wohali Partners, LLC into Wohali Land Estates, LLC, to be secured by a standby letter of credit. If not, non-EB5 unsecured creditors get $3 million over three years.

15. Noticeably absent from the Agreement is *any* mention of the new EB5 state court lawsuit or the lis pendens EB5 slapped on the three critical parcels simultaneously with filing the lawsuit. The primary purpose of any substantive consolidation herein (vis-à-vis the Debtor's parent, at least initially) would be to obtain those three parcels.

16. The Agreement also does not resolve Wohali Concerned Owners' Objection or the Challenge, as they were not included in the settlement. Nor does the Agreement resolve EB5's retaliatory objections to certain proofs of claim filed by some of Wohali Concerned Owners and related discovery requests, which are obviously aimed more than anything at distracting and burdening Wohali Concerned Owners.[4]

17. In short, the Trustee has now decided to settle with EB5, drop all challenges to EB5's Claim, and enter into the Agreement without Wohali Concerned Owners' involvement. This is a matter of public record. As discussed below, the estate's claims against EB5 are valuable— indeed, much more valuable than the meager settlement the Trustee has obtained—and others should be able to take up the torch that the Trustee is unwilling or unable to hold high.

<u>RELIEF REQUESTED AND GROUNDS THEREFORE</u>

18. In chapter 11 cases, claims based on the statutes in chapter 5 of the Bankruptcy Code are ordinarily controlled and brought by the debtor in possession or a chapter 11 trustee

---

[4] [*See* Dkt. Nos. 290-298 (objecting to Proof of Claim Nos. 28-3, 29-1, 39-1, 42-1, 43-1, 45-1, 46-1, 64-1, 65-1, 66-1, and 67-1).]

preconfirmation. If the debtor or trustee declines to assert such a chapter 5 claim, a bankruptcy court can confer derivative standing on an individual creditor or unsecured creditors committee preconfirmation. In the present case, this motion seeks derivative standing preconfirmation for an ad hoc group of unsecured creditors and administrative claimants known as Wohali Concerned Owners.

19.     A quarter century ago, the U.S. Supreme Court held that the plain text of 11 U.S.C. § 506(c) merely states "that the trustee may seek recovery under the section, not that others may not. The question thus becomes whether it is a proper inference that the trustee is the only party empowered to invoke the provision. We have little difficulty answering yes." *Hartford Underwriters Ins. Co. v. Union Planters Bank,* 530 U.S. 1, 6 (2000) (footnote omitted). Yet *Hartford*'s holding did not extend to derivative standing generally:

> We do not address whether a bankruptcy court can allow other interested parties to act in the trustee's stead in pursuing recovery under § 506(c). . . . [We note] the practice of some courts of allowing creditors or creditors' committees a derivative right to bring avoidance actions when the trustee refuses to do so, even though the applicable Code provisions, see 11 U.S.C. §§ 544, 545, 547(b), 548(a), 549(a), mention only the trustee. See, *e.g., In re Gibson Group, Inc.,* 66 F.3d 1436, 1438 (C.A.6 1995). Whatever the validity of that practice, it has no analogous application here, since petitioner did not ask the trustee to pursue payment under § 506(c) and did not seek permission from the Bankruptcy Court to take such action in the trustee's stead.

*Id.* at 13 n.5.

20.     Courts recognize an "implied, but qualified" right under section 1109(b) of the Bankruptcy Code for creditors, not just a committee, to initiate adversary proceedings on behalf of the debtor's estate, with approval of the bankruptcy court. *See, e.g., In re STN Enterprises*, 779 F.2d 901, 904 (2d Cir. 1985); *Official Comm. of Unsecured Creditors of Cybergenics Corp.* v. *Chinery*, 330 F.3d 548, 567–68 (3d Cir. 2003).

21.     That is because "the word 'including' is not a limiting term, and therefore, 'party in interest' is not confined to the list of examples provided in section 1109(b)." *Vermejo Park Corp. v. Kaiser Coal Corp.* (*In re Kaiser Steel Corp.*), 998 F.2d 783, 788 (10th Cir. 1993). "A party is a party in interest if it 'has a sufficient stake in the proceeding so as to require representation.'" *In re Kearney*, 615 B.R. 488, 492 (Bankr. D.N.M. 2020) (cleaned up). "Party in interest" status "is generally understood to include all persons whose pecuniary interests are . . . directly affected by the bankruptcy proceedings." *Nintendo Co., Ltd. v. Patten* (*In re Alpex Computer Corp.*), 71 F.3d 353, 356 (10th Cir. 1995). This practice "promotes a fair and equitable reorganization process." *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 602 U.S. 268, 144 S. Ct. 1414, 1425 (2024).

22.     EB5 and/or the Trustee will likely point to *United Phosphorus, Ltd. v. Fox* (*In re Fox*), 305 B.R. 912 (10th Cir. BAP 2004), wherein the BAP ruled that only a trustee can bring a claim under § 548, and the sole remedy is for the disgruntled creditor to seek the trustee's removal under § 324. *See id.* at 915-16. Yet *Fox* is not binding on this Court. *See In re McGrath*, 621 B.R. 260, 262 (Bankr. D.N.M. 2020).

23.     Even the persuasive value of *Fox* was greatly undermined by the Tenth Circuit's subsequent decision of *In re MS55, Inc.,* 477 F.3d 1131 (10th Cir. 2007). There, Judge Tymkovich observed in a footnote that other circuits have continued to allow derivative standing after *Hartford* and did not even mention *Fox. See id.* at 1139 n.9.

24.     In the ensuing decades after *Fox* and in the wake of *MS55*, three sister bankruptcy courts within the Tenth Circuit have conveyed derivative standing on creditors' committees. *See, e.g., In re Roman Catholic Church of Archdiocese of Santa Fe*, 621 B.R. 502, 506-514 (Bankr. D.N.M. 2020); *In re Ellicott Springs Res., LLC,* 485 B.R. 626, 640 (Bankr. D. Colo. 2013); *Village*

*of Overland Pointe, LLC v. Terra Bentley II, LLC* (*In re Terra Bentley II, LLC*), No. 09-23107, 2011 WL 808190, at *4 (Bankr. D. Kan. Mar. 2, 2011). *Fox* is in an extreme outlier that need not be followed. "Every circuit court that has ruled on the question of derivative standing after *Hartford* has allowed it" and "[a]lmost all bankruptcy courts, BAPs, and district courts have ruled the same way[.]" *Roman Catholic Church of Archdiocese of Santa Fe*, 621 B.R. at 506-07.

25.     Ordinarily, to obtain derivative standing, a committee or creditor must first make demand on the trustee to assert the chapter 5 claim, which the trustee or debtor-in-possession must unjustifiably refuse to bring. *See id.*, 621 B.R. at 509; *In re Yellowstone Mountain Club, LLC,* No. 08-61570, 2009 WL 982207, at *6 (Bankr. D. Mont. Jan. 16, 2009).

26.     The futility of demand here is a direct consequence of the Trustee's decision to settle all claims against EB5 as part of on the Agreement. A party in interest seeking derivative standing need not formally demand that the trustee act where it is "plain from the record that no action on the part of the [trustee] would have been forthcoming." *Official Comm. of Unsecured Creditors of Nat'l Forge Co.* v. *E. Roger Clark* (*In re Nat'l Forge Co.*), 326 B.R. 532, 544 (W.D. Pa. 2005).

27.     Here, by the express provisions of the Agreement, the Trustee is ready (subject to Court approval under Rule 9019) to waive *all* the estate's claims against EB5 and deprive the creditors of such claims, despite their very high potential value to the estate. Thus, Wohali Concerned Owners' informal request for consent was sufficient. *See In re Nat'l Forge*, 326 B.R. at 545 (holding that creditor seeking standing was not required to make formal demand on the debtor where the debtor had waived all rights to contest secured claim).

28.     In such circumstances, a creditor seeking derivative standing need not plead facts alleging the trustee's reason or motive for the inaction, but may meet its burden to establish

unjustified inaction by alleging facts establishing the existence of an unpursued colorable claim,[5] together with specific reasons why pursuit of the colorable claim, if successful, would benefit the estate and is necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings. *See, e.g., In re Terra Bentley II, LLC,* 2011 WL 808190, at \*4; *PW Enters., Inc. v. N.D. Racing Comm'n (In re Racing Servs., Inc.),* 540 F.3d 892, 898, 900 (8th Cir. 2008); *In re Canadian Pac. Forest Prods., Ltd., v. J.D. Irving, Ltd.* (*In re Gibson Grp., Inc.*)*,* 66 F.3d 1436, 1439-40 (6th Cir. 1995).

29.      In other words, a committee or creditor could still be granted derivative standing even if the trustee does not unjustifiably refuse to bring a chapter 5 claim so long as: (i) the proposed claim is colorable, (ii) the trustee consents (or does not formally oppose) the creditor/committee having such standing; and (iii) the bankruptcy court concludes that the proposed claim(s) is/are (a) in the best interests of the estate and (b) necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings. *See Ellicott Springs Res., LLC,* 485 B.R. at 635-38. *See also In re Roman Cath. Diocese of Rockville Ctr., N.Y.*, 654 B.R. 212, 221 (Bankr. S.D.N.Y. 2023); *In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 516 (Bankr. S.D.N.Y. 2016); *In re Smart World Techs., LLC*, 423 F.3d 166, 176 (2d Cir. 2005).

---

[5]  A "claim is colorable if it would survive a motion to dismiss."  *In re Pursuit Capital Mgmt.,* 595 B.R. 631, 664 (Bankr. D. Del. 2018). This showing "is a relatively easy one to make." *In re Adelphia Comms. Corp.*, 330 B.R. 364, 376 (Bankr. S.D.N.Y. 2005). The mere showing that EB5 may have defenses to the proposed counterclaim would not defeat an argument that the Wohali Concerned Owners have stated a colorable counterclaim. *See In re Roman Cath. Church of Archdiocese of Santa Fe*, 621 B.R. at 513. The Trustee agrees, and has "concluded that those claims—while colorable—face substantial headwinds" and "Though the Trustee continues to believe litigation against EB5 *could* succeed, the Trustee is unable to conclude that litigation against EB5 *would* succeed" therefore seeks court approval to settle these claims because "there is no clear path to victory for the estate through litigation, which would present substantial risk and an uncertain benefit." [Dkt. # 366 at ¶¶ 7, 9]

30. This test is the same regardless of whether the entity seeking standing is an individual creditor or an official creditors' committee. *See In re Housecraft Indus. USA, Inc.*, 310 F.3d 64, 71 n.7 (2d Cir. 2002) (noting *STN*'s holding also applies to individual creditors); *In re Castro*, 503 Fed. Appx. 612, 615 (10th Cir. 2012) (creditor with a colorable claim of a lien against the debtor's property had standing as a party in interest to seek relief from the automatic stay).[6]

31. The Court has already implicitly held that such derivative standing is possible. The Interim DIP Order expressly provides that "Nothing herein shall be construed to limit the right of the estate to assign (subject to appropriate notice and a hearing) or assert any avoidance action it may have against the DIP Lender's prepetition UCC-1 filing." [Dkt. # 211 at 6 (¶ F)]

32. Here, the Trustee has decided to settle *all* the Estate's potential claims against EB5 for what can only be characterized as a de minimis value as compared to the value of the potential claims against EB5.

33. For instance, as shown in their proposed Complaint (to be filed as Exhibit 1 to this Motion once the Court grants the request to file that proposed Complaint under seal [Dkts. 363 & 364]), the Estate has numerous, strong claims against EB5, with the constructive fraudulent conveyance claim alone seeking at least $49,475,000 (based on loan funds advanced by EB5 after the time it knew or certainly should have known the Debtor could no longer pay its debts as they became due and thus was for all intents and purposes insolvent).

---

[6] In the Second and Third Circuits, bankruptcy courts can also confer derivative standing "when the committee acts as co-plaintiff with the debtor-in-possession or trustee." *Official Comm. of Equity Security Holders of Adelphia Commc'ns Corp. v. Official Comm. of Unsecured Creditors of Adelphia Commc'ns Corp.* (*In re Adelphia Commc'ns Corp.*), 544 F.3d 420, 424 (2d Cir. 2008) (citing *Glinka v. Murad* (*In re Housecraft Indus. USA, Inc.*), 310 F.3d 64, 70-72 (2d Cir. 2002)). The BAP in *Fox* indicated that something similar would be permissible even under that panel's narrow reading of § 548. *See Fox*, 305 B.R. at 916 n.8 ("innovative creditor's counsel might find other permissible ways to achieve the objective, such as . . . . assist[ing] the trustee with the litigation with approval of the bankruptcy court."). Of course, that is no longer an option here (at least not at this time), seeing as the Trustee is proposing to settle at de minimis value all Estate claims against EB5.

34. Wohali Concerned Owners maintain that the value to the Estate of the Agreement between EB5 and the Trustee is a tiny fraction of what could be brought to the Estate via the claims sought to be asserted against EB5 as set forth in the proposed Complaint.

35. And, the Trustee's decision to not undertake the risk of his own challenge is not just regrettable, but wrongful and would lead to unsecured creditors being sacrificed at the expense of EB5 and the Trustee's unwillingness to litigate what he admits are claims that would not only survive a motion to dismiss but would also survive summary judgment. Any denial of this request for derivative standing would considerably harm the Estate.

36. Ultimately, the claims set forth in the proposed Complaint are more than colorable, at one time (pre-settlement) the Trustee indicated a willingness to consent to Wohali Concerned Owners having derivative standing. The Court should conclude that the proposed claims are (a) in the best interests of the estate and (b) necessary and beneficial to the fair and efficient resolution of these bankruptcy proceedings.

## CONCLUSION

37. WHEREFORE, based on the foregoing, Wohali Concerned Owners respectfully request that this Court grant Wohali Concerned Owners derivative standing to assert the proposed claims against EB5 as set forth in their proposed Complaint (to be filed separately under seal), and for such other and further relief as the Court deems just and appropriate under the circumstances.

Dated: April 3, 2026             Respectfully submitted,

/s/ David P. Billings
Jason W. Hardin
David P. Billings
FABIAN VANCOTT
*Attorneys for Wohali Concerned Owners*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 3rd day of April 2026, a true and correct copy of the foregoing **WOHALI CONCERNED OWNERS' MOTION FOR DERIVATIVE STANDING TO ASSERT CERTAIN CLAIMS AGAINST EB5AN WOHALI UTAH FUND XV, LP** was electronically filed and therefore served via ECF on the following:

- David P. Billings    dbillings@fabianvancott.com, khaynes@fabianvancott.com
- Bryan H Booth    bryan@mountainwestlaw.com, lisa@mountainwestlaw.com
- Scott S Bridge    sbridge@keslerrust.com
- Matthew James Burne    matthew.burne@usdoj.gov, Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@us doj. gov;Brittany.Dewitt@usdoj.gov
- Ryan C. Cadwallader    rcadwallader@kmclaw.com, twhite@kmclaw.com
- P. Matthew Cox    mcox@spencerfane.com, ecall@spencerfane.com;mwatson@spencerfane.com
- Michael Allen Gehret    mike.gehret@dentons.com, kim.altamirano@dentons.com
- Patricia Geary Glenn    pgearyglenn@gmail.com
- Jason W. Hardin    jhardin@fabianvancott.com, sirvin@fabianvancott.com
- Carson Heninger    heningerc@gtlaw.com, carson-heninger5642@ecf.pacerpro.com,Candy.Long@gtlaw.com
- George B. Hofmann    ghofmann@ck.law, mparks@ck.law;enilson@ck.law
- Annette W. Jarvis    jarvisa@gtlaw.com, longca@gtlaw.com
- Michael R. Johnson    mjohnson@rqn.com, docket@rqn.com;ASanchez@rqn.com;RQN@ecfalerts.com
- Penrod W. Keith    penrod.keith@dentons.com, kristin.hughes@dentons.com
- Justin J. Keys    justin@hlhparkcity.com, nancy@hlhparkcity.com
- Bryce L. Krieger    bryce.krieger@dentons.com
- Trevor C Lang    tclang@agutah.gov, staff@mohtrial.com
- Matt McKinlay    mmckinlay@ampleo.com
- Elijah L. Milne    eli.milne@dentons.com,deb.calegory@dentons.com,jaime.gargano@dentons.com ,kristen.ivory@dentons.com
- Matt C. Osborne    matt@oblawpc.com
- Ellen E. Ostrow    eostrow@foley.com, ellen-ostrow4512@ecf.pacerpro.com;docketflow@foley.com;geysa.peeler@foley.com
- Douglas J. Payne    dpayne@fabianvancott.com, lwilson@fabianvancott.com;dadamson@fabianvancott.com
- Charles Louis Pearlman    charles@hlh.law
- Mark C. Rose    mrose@rqn.com, docket@rqn.com;asanchez@rqn.com
- Jeffrey Weston Shields    jshields@rqn.com, 5962725420@filings.docketbird.com;docket@rqn.com;ecasaday@rqn.com
- Jeremy C. Sink    jsink@kmclaw.com, mcarlson@kmclaw.com
- Abigail Jennifer Stone    abigail.stone@gtlaw.com

- Jeffrey L. Trousdale    jtrousdale@cohnekinghorn.com, mparks@ck.law;enilson@ck.law
- United States Trustee    USTPRegion19.SK.ECF@usdoj.gov

*/s/ Krystal Haynes*
Krystal Haynes

4932-9435-6614, v. 1