**This order is SIGNED.**

**Dated: April 30, 2026**



**PEGGY HUNT**
**U.S. Bankruptcy Judge**

*slo*

*Prepared and submitted by:*
Ellen E. Ostrow (#14743)
eostrow@foley.com
FOLEY & LARDNER LLP
95 State Street, Suite 2500
Salt Lake City, UT  84111
Telephone:  801.401.8900

*Counsel for Chapter 11 Trustee*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Case No. 25-24610 |
| **WOHALI LAND ESTATES, LLC** | (Chapter 11) |
| Debtor. | Honorable Peggy Hunt |

**ORDER ON CHAPTER 11 TRUSTEE'S MOTION, PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b), AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 6004, 9014 AND 9019, FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BETWEEN THE TRUSTEE, ON THE ONE HAND, AND EB5AN WOHALI UTAH FUND XV, LP, ON THE OTHER HAND**

**(Relates to Adv. No. 25-02175)**

The matter before the Court is the *Chapter 11 Trustee's Motion, Pursuant to 11 U.S.C. §§ 105(a) and 363(b), and Federal Rules of Bankruptcy Procedure 6004, 9014, and 9019, for Entry of an Order Approving a Settlement Agreement and Release of Claims Between the Trustee, on the one Hand, and EB5AN Wohali Utah Fund XV, LP, on the Other Hand* [Docket No. 366] (the

1

"*Motion*").[1] After an evidentiary hearing that commenced on April 15, 2026, the Court made findings and conclusions on the record on April 29, 2026, which are incorporated herein. Appearances were made on the record. Based on the Court's findings and conclusions, and for good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Motion is GRANTED.

2. The Settlement Agreement attached hereto as <u>Exhibit A</u>, as modified by <u>Exhibit B</u> attached hereto and the stipulation between the U.S. Trustee, EB5, and the Trustee at Docket No. 440 attached hereto as <u>Exhibit C</u>, is APPROVED.

3. The Trustee shall file a motion and notice of hearing for any sale of the WP Parcels to EB5 and a report of sale thereafter.

4. The Court retains jurisdiction over any matter or dispute arising from or relating to this Order.

--- END OF ORDER ---

4912-5147-7917.1

[1] Capitalized terms not otherwise herein defined have the meaning ascribed to them in the Motion.

4912-5147-7917.1

## DESIGNATION OF PARTIES TO RECEIVE NOTICE OF COURT ORDER

Service of the foregoing **ORDER ON CHAPTER 11 TRUSTEE'S MOTION, PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b), AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 6004, 9014 AND 9019, FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BETWEEN THE TRUSTEE, ON THE ONE HAND, AND EB5AN WOHALI UTAH FUND XV, LP, ON THE OTHER HAND** shall be served on the parties in the manner designated below:

**By Electronic Service**: I certify that the parties of record in this case, as identified below, are registered CM/ECF users.

- **David P. Billings**   dbillings@fabianvancott.com, khaynes@fabianvancott.com
- **Bryan H Booth**   bryan@mountainwestlaw.com, lisa@mountainwestlaw.com
- **Scott S Bridge**   sbridge@keslerrust.com
- **Matthew James Burne**   matthew.burne@usdoj.gov, Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **Ryan C. Cadwallader**   rcadwallader@kmclaw.com, twhite@kmclaw.com
- **P. Matthew Cox**   mcox@spencerfane.com, ecall@spencerfane.com;mwatson@spencerfane.com
- **Michael Allen Gehret**   mike.gehret@dentons.com, kim.altamirano@dentons.com
- **Patricia Geary Glenn**   pgearyglenn@gmail.com
- **Jason W. Hardin**   jhardin@fabianvancott.com, sirvin@fabianvancott.com
- **Carson Heninger**   heningerc@gtlaw.com, carson-heninger-5642@ecf.pacerpro.com,Candy.Long@gtlaw.com
- **George B. Hofmann**   ghofmann@ck.law, mparks@ck.law;enilson@ck.law
- **Annette W. Jarvis**   jarvisa@gtlaw.com, longca@gtlaw.com
- **Michael R. Johnson**   mjohnson@rqn.com, docket@rqn.com;ASanchez@rqn.com;RQN@ecfalerts.com
- **Penrod W. Keith**   penrod.keith@dentons.com, kristin.hughes@dentons.com
- **Justin J. Keys**   justin@hlhparkcity.com, nancy@hlhparkcity.com
- **Bryce L. Krieger**   bryce.krieger@dentons.com
- **Trevor C Lang**   tclang@agutah.gov, staff@mohtrial.com
- **Matt McKinlay**   mmckinlay@ampleo.com
- **Elijah L. Milne**   eli.milne@dentons.com, deb.calegory@dentons.com;jaime.gargano@dentons.com,kristen.ivory@dentons.com
- **Matt C. Osborne**   matt@oblawpc.com
- **Ellen E. Ostrow**   eostrow@foley.com, ellen-ostrow-4512@ecf.pacerpro.com;docketflow@foley.com;geysa.peeler@foley.com
- **Douglas J. Payne**   dpayne@fabianvancott.com, lwilson@fabianvancott.com;dadamson@fabianvancott.com
- **Charles Louis Pearlman**   charles@hlh.law
- **Mark C. Rose**   mrose@rqn.com, docket@rqn.com;asanchez@rqn.com
- **Jeffrey Weston Shields**   jshields@rqn.com, 5962725420@filings.docketbird.com;docket@rqn.com;ecasaday@rqn.com

- **Jeremy C. Sink**   jsink@kmclaw.com, mcarlson@kmclaw.com
- **Abigail Jennifer Stone**   abigail.stone@gtlaw.com
- **Jeffrey L. Trousdale**   jtrousdale@cohnekinghorn.com, mparks@ck.law;enilson@ck.law
- **United States Trustee**   USTPRegion19.SK.ECF@usdoj.gov

**By U.S. Mail**: In addition to the parties receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

- All parties on the Court's official mailing matrix.


/s/ *Elisha Burton*

4912-5147-7917.1

# **EXHIBIT A**

4912-5147-7917.1

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "**Agreement**") is made and entered into this 24th day of March, 2026, by and between EB5AN Wohali Utah Fund XV, LP ("**EB5**"), a Delaware limited partnership, on the one hand, and Matthew McKinlay, not individually but solely in his capacity as the Chapter 11 trustee (the "**Trustee**") of Wohali Land Estates, LLC (the "**Debtor**"), a Utah limited liability company, on the other. EB5 and the Trustee are each a "**Party**" and may be collectively referred to herein as the "**Parties**."

## RECITALS

1.  On August 11, 2022, the Debtor, as borrower, and EB5, as lender, entered into a loan agreement (the "**Loan Agreement**") pursuant to which EB5 agreed to lend the Debtor up to a principal amount of $79.2 million (the "**EB5 Loan**") funded by proceeds received from up to 99 investors qualified to participate in a securities offering conducted in connection with the EB-5 Immigrant Investor Program administered under the Immigration and Nationality Act, Section 203(b)(5) *et seq.*, as amended.

2.  Contemporaneously therewith, the Debtor and EB5 executed a promissory note (the "**Note**") for up to a principal amount of $79.2 million issued pursuant to the Loan Agreement. Pursuant to the Note, the Debtor promised to pay EB5 an amount equal to the outstanding principal amount of the EB5 Loan, plus interest thereon.

3.  On October 31, 2022, the Debtor executed and delivered to EB5 that certain Deed of Trust, Assignment of Rents and Leases, Security Agreement and Fixture Filing (the "**Trust Deed**"), pursuant to which it granted EB5 a lien on and security interest in various assets, including real property, rents, improvements, buildings, water rights, and all other property described in the

Trust Deed (collectively, the "**Collateral**"), which Collateral is located in both Summit County and Morgan County, Utah, and relates to the following tax parcels identified by Tax ID Number:

**Summit County Tax ID Number(s):**

CT-WOH-COMB, CT-441, CT-449, WOH-1-3, WOH-1-7, WOH-1-8, WOH-1-9, WOH-1-13, WOH-1-14, WOH-1-15, WOH-1-64, WOH-1-65, WOH-1-68, WOH-1-69, WOH-1-73, NS-294, NS-295, NS-296, NS-298-A, NS-299, NS-317, NS-BDY-21, and NS-BDY-20.

**Morgan County Tax ID Number(s):**

00-0005-0375; Serial No. 01-002-125-03, 00-0000-2731; Serial No. 01-002-134, 00-0084-9030; Serial No. 01-002-135-01, 00-0000-2749; Serial No. 01-002-136, 00-0000-2764; Serial No. 01-002-137 and 00-0000-2780; and Serial No. 01-002-138.

4. The Trust Deed was duly recorded in the office of the Summit County Recorder's Office on November 9, 2022, as Entry Number 01197541, in Book 2763, beginning at Page 1333 of the Official Records. The Trust Deed also was duly recorded in the office of the Morgan County Recorder's Office on November 9, 2022, as Entry Number 162312, in Book 396, beginning at Page 599 of the Official Records.

5. After the Debtor defaulted under the Loan Agreement, EB5 issued sequential notices of default and, on May 13, 2025, a notice of acceleration pursuant to which EB5 (i) terminated the EB5 Loan and its obligations to make any additional disbursements under the Loan Agreement and (ii) declared all outstanding principal and accrued interest under the Loan Agreement immediately due and payable.

6. On August 8, 2025 (the "**Petition Date**"), the Debtor commenced the "**Chapter 11 Case**" by filing a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**") with the United States Bankruptcy Court for the District of Utah (the "**Court**").

7. As of the Petition Date, EB5 asserts that the outstanding balance due and owing with respect to the EB5 Loan stood at $86,167,955.67 (the "**EB5 Prepetition Claim**"), consisting of (i) unpaid principal in the amount of $78,870,000.00, (ii) accrued and unpaid interest in the amount of $7,161,962.98, and (iii) attorneys' fees and costs incurred and booked to the EB5 Loan in the amount of $135,992.69. Subject to approval of this Agreement, the Trustee has reviewed the Loan Agreement and other relevant documents and confirmed the correct calculation of the EB5 Prepetition Claim.

8. On September 11, 2025, EB5 filed in the Chapter 11 Case that certain *Emergency Motion to Appoint a Chapter 11 Trustee, and Memorandum in Support of Motion* [Dkt. No. 69] (the "**Trustee Motion**").

9. On September 17, 2025, the Debtor, EB5, the U.S. Trustee, and a group of landowners within the Wohali development self-identifying as the "**Wohali Concerned Owners**" stipulated to the appointment of a Chapter 11 trustee pursuant to the Trustee Motion [Dkt. No. 80].

10. On September 25, 2025, the Court entered an order granting the Trustee Motion and directing the appointment of a Chapter 11 trustee [Dkt. No. 84]. On September 30, 2025, the U.S. Trustee appointed the Trustee; the Trustee's appointment was approved by the Court on October 9, 2025 [Dkt. No. 102].

11. On November 14, 2025, the Trustee filed the *Chapter 11 Trustee's Motion for Entry of Interim and Final Orders (I) Authorizing the Trustee to (A) Obtain Postpetition Financing From EB5AN Wohali Utah Fund XV, LP, (B) Utilize Cash Collateral, and (C) Pay the Wohali Public Infrastructure Development 2025 Assessment, (II) Granting Liens and Providing Claims with Superpriority Administrative Expense Status, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* [Dkt. No. 158] (the "**DIP Motion**"). Pursuant to

4937-6077-4300.1

the DIP Motion, the Trustee sought approval of a debtor-in-possession financing facility offered by EB5 (the "**DIP Facility**") under which EB5 would lend the Debtor up to an aggregate principal amount of $6.3 million (the "**DIP Loan**" and EB5's claim arising from the DIP Loan, the "**DIP Claim**"). The Court entered an interim order approving the DIP Loan on December 17, 2025 [Dkt. No. 211], and a final order approving the DIP Loan on February 27, 2026 [Dkt. No. 323] (together, the "**DIP Orders**"). The Court previously made the final order effective from the bench on January 23, 2026.

12. Under the DIP Orders, which approved a modified DIP Facility that contemplated an increased DIP Loan aggregate principal amount of $6.8 million, the Trustee and all other parties in interest were granted until January 30, 2026, to lodge any challenge to the EB5 Prepetition Claim or EB5's liens on the Debtor's property. On January 27, 2026, the Trustee filed a notice of his intent to challenge the EB5 Prepetition Claim.

13. On January 29, 2026, the Trustee and EB5 filed a *Stipulation and Joint Motion for Order Referring Parties to Mediation and Extending Challenge Period* [Dkt. No. 281] (the "**Mediation Stipulation**"). Though the Court approved the Mediation Stipulation [Dkt. No. 288], the Trustee and EB5, joined by the Wohali Concerned Owners, ultimately chose to pursue a private mediation (the "**Mediation**") with James T. Markus on March 17, 2026 and March 18, 2026. The Mediation continued through March 24, 2026.

14. On March 6, 2026, the Trustee filed the *Chapter 11 Trustee's Motion for: (I) An Order (A) Approving Bid Procedures for the Sale of Assets; (B) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (C) Scheduling the Auction and Sale Hearing; and (D) Granting Related Relief; and (II) An Order (A) Approving the Sale, Free and Clear of All Claims, Liens, and Encumbrances; and (B) Approving the Assumption*

*and Assignment or Rejection of Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [Dkt. No. 333] (the "**Bidding Procedures Motion**"). By the Bidding Procedures Motion, which is anticipated to be considered by the Court on April 2, 2026 (the "**Bidding Procedures Hearing**"), the Trustee seeks the Court's approval of bidding procedures with respect to the sale of the Debtor's assets (such sale, the "**Sale**"), which bidding procedures contemplate that the Trustee will select and provide notice of a "Stalking Horse Bidder" for the Debtor's assets by a date to be approved by the Court.

15. In advance of the Mediation, the Trustee shared a mediation statement (the "**Trustee's Statement**") with EB5 in which the Trustee articulated the basis for potential claims held by the Debtor and the Debtor's estate against EB5 including constructive fraudulent transfer, equitable subordination, recharacterization, and unjust enrichment. These claims, if successful, could impact the EB5 Prepetition Claim. EB5 responded to the Trustee's Statement denying liability on all potential counts.

16. At the Mediation, the Parties discussed the merits of their respective positions and reached an agreement, incorporated herein, whereby (a) EB5 will provide the Trustee with a "stalking horse bid" for the Debtor's assets on the terms set forth herein and (b) the Trustee will (i) release and discharge EB5 from any and all claims or potential claims the Debtor or its estate may be able to assert against EB5 relating to the EB5 Loan or the EB5 Prepetition Claim; and (ii) fulfill the covenants set forth herein.

<u>**AGREEMENT**</u>

Based upon the foregoing Recitals, which are expressly incorporated herein by this reference, and for good and valuable other consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be bound, stipulate and agree as follows:

5

1.      <u>Stalking Horse Bid</u>. Upon the effective date of this Agreement, EB5 will provide the Trustee with a stalking horse bid for the Debtor's assets comprising:

a.      a credit bid in the amount of $65,000,000 comprising (i) first, the full amount of the DIP Claim (estimated $7,000,000 principal and interest) and (ii) second, the EB5 Prepetition Claim in the amount of $58,000,000; *provided* that EB5 reserves the right to credit bid up to $89,000,000 at any auction or other sale of the Debtor's assets, with such credit bid comprising (i) first, the full amount of the DIP Claim and (ii) second, the EB5 Prepetition Claim up to the amount of $82,000,000;

b.      $1,800,000.00 in cash, the proceeds of which shall be used to fund allowed administrative claims, including those of EB5 and the Wohali Concerned Owners, and, to the extent funds remain, to fund the Trustee's administration of the estate;

c.      a binding agreement that EB5's allowed general unsecured deficiency claim against the Debtor's estate, being the difference between the EB5 Prepetition Claim and the amount that EB5 credit-bids the EB5 Prepetition Claim at the sale of the Debtor's assets, shall not exceed the lesser of (i) the actual amount of the deficiency claim (e.g., the difference between the all amounts owed to EB5 less the amount of its successful bid), or (ii) Ten Million Dollars ($10,000,000) (the "**Deficiency Claim**");

d.      a binding promise to acquire the three parcels of real property previously titled in the name of Wohali Partners, LLC ("**Wohali Partners**"), the direct or indirect parent of the Debtor, and now believed to be titled in the name of BLD71048-A25, LLC, identified as Parcels X, Y, and Z on Exhibit [__] hereto (the "**WP Parcels**"), at appraised fair market value, as more fully described in Section 3 below;

e.      a binding promise to provide the Unsecured Creditor Guarantee (as defined below) as more fully described in Paragraph 6 below;

f.      an assumption of all outstanding obligations to the Wohali Public Infrastructure District No. 1 and No. 2 ("**PID**") and tax liabilities; and

g.      an assumption of all obligations arising under the Boyden Farms loan documents, solely to the extent that the subordination agreement relating to the Boyden Farms loan is determined by a final, non-appealable order of the Court to be invalid or unenforceable.

2.      <u>Liquidating Trust</u>. A liquidating trust (the "**Liquidating Trust**") shall be established pursuant to a plan of reorganization or liquidation proposed by the Trustee and

4937-6077-4300.1

confirmed in the Chapter 11 Case. The Trustee shall assign to the Liquidating Trust any and all causes of action belonging to the Debtor's estate (except for the claims released under this Agreement), including but not limited to avoidance actions, fraudulent transfer claims, preference claims, and any other claims against third parties whether arising under state or federal law and whether legal or equitable in nature (collectively, the "**Trust Causes of Action**"). The Trustee will serve as the liquidating trustee of the Liquidating Trust, and EB5 shall have consultation rights in the administration of the Liquidating Trust. EB5 and all other holders of allowed general unsecured claims shall be the beneficiaries of the Liquidating Trust. Considering the mutual releases set forth herein, nothing shall preclude the Trustee and EB5 from executing a common interest agreement to better facilitate the sharing of information and the Trustee's pursuit of the Trust Causes of Action to the benefit of the Debtor's estate. Nothing herein shall prevent the Trustee from converting the case to one under Chapter 7 if the Trustee determines in his business judgment that conversion is in the best interest of creditors and the estate. The terms of this Agreement will be binding on any subsequently appointed Chapter 7 trustee. EB5 reserves all rights to respond to any motion to convert filed by the Trustee.

3.     EB5's Acquisition of WP Parcels. The Trustee will pursue recovery of the WP Parcels in good faith, and upon the Trustee's receipt of clear marketable record title to the WP Parcels, free and clear of all adverse liens, interests, and claims, through substantive consolidation or otherwise (the "**Trustee WP Parcel Acquisition**"), EB5 agrees to acquire the WP Parcels  (the "**EB5 WP Parcel Acquisition**") at a purchase price equal to the average of two independent appraisals of the fair market value of each parcel, each conducted by a qualified MAI-certified appraiser selected by each Party respectively within 180 days before the close of the EB5 WP Parcel Acquisition. The closing of the EB5 WP Parcel Acquisition shall occur upon the earlier of

4937-6077-4300.1

(i) EB5's election or (ii) the end of the Backstop Period (as defined below). If EB5 does not close on the WP Parcels within 120 days of the Trustee WP Parcel Acquisition, EB5 shall enter into a lease with the estate or Liquidating Trust, as applicable, with monthly base rent of $14,583.33 (the "**WP Rent Payments**"). Between the Trustee WP Parcel Acquisition and the commencement of the WP Rent Payments, EB5 will pay all carrying costs of the WP Parcels. The WP Rent Payments shall be used by the Trustee to pay carrying costs incurred by the bankruptcy estate or Liquidating Trust relating to carrying the WP Parcels until the close of the EB5 WP Parcel Acquisition. The WP Rent Payments shall be distributed in accordance with the waterfall set forth in Section 5 of this Agreement; *provided however*, any such distributions after payment of carrying costs and administrative costs and expenses of the Bankruptcy Estate and Liquidating Trust will be paid only to non-EB5 unsecured creditors at a date determined by the Trustee in his sole discretion and will be credited against the Unsecured Creditor Guarantee.

4.      Other Land Parcels. In the relevant lookback period prior to the Petition Date, a certain number of parcels in the Wohali Project (the "**Other Land Parcels**") were transferred to certain of the Debtor's equity investors (the "**Land Recipients**") in exchange for credits against such Land Recipients' respective equity investments. The Trustee intends to pursue causes of action with respect to the Other Land Parcels. If the Trustee recovers real property in pursuing the estate's causes of action, such property shall be sold at open market no earlier than 120 days from the close of the Trustee's acquisition of such real property. All cash proceeds actually received by the estate from the Other Land Parcels Sales shall be distributed in accordance with the waterfall set forth in Section 5 of this Agreement.

5.      Distribution of Proceeds. All (i) cash proceeds recovered through the prosecution of the estate's causes of action, (ii) cash proceeds of the EB5 WP Parcel Acquisition, and (iii) cash

proceeds of the Other Land Parcels Sales (collectively, the "**Proceeds**") shall be distributed in accordance with the following order of priority, with each tier to be satisfied in full before any distribution is made to the next tier:

    a.    *First*, administrative costs and expenses of the Bankruptcy Estate and Liquidating Trust;

    b.    *Second*, the Debtor's unsecured creditors, including EB5 on account of the Deficiency Claim, on a pro rata basis.

6.    <u>Unsecured Creditor Guarantee</u>. EB5 hereby guarantees, subject only to the conditions set forth in section 8 of this Agreement, that non-EB5 holders of allowed general unsecured claims against the Debtor's estate (the "**Non-EB5 Unsecured Creditors**") shall receive for their claims a minimum of their pro rata share of Four Million Dollars ($4,000,000) (the "**Unsecured Creditor Guarantee**"). Subject to section 7 of this Agreement, EB5 shall make to the Liquidating Trust twelve (12) equal quarterly installment payments of $333,333.33 (the "**Unsecured Creditor Guarantee Payments**"), commencing ninety (90) days following the closing of the sale of the Debtor's assets and continuing each quarter thereafter until 12 quarters, or three years, have passed (such period, the "**Backstop Period**"). The Trustee shall distribute the Unsecured Creditor Guarantee Payments to Non-EB5 Unsecured Creditors on a pro rata basis based on the face amount of their respective allowed general unsecured claims at appropriate intervals decided by the Trustee. EB5's obligation to make the Unsecured Creditor Guarantee Payments shall be secured by a standby letter of credit in the full amount of $4,000,000, issued by a financial institution reasonably acceptable to the Trustee, which EB5 shall obtain and deliver to the Trustee prior to the closing of the Sale.

7.    <u>Credit Reductions to the Unsecured Creditor Guarantee Payments</u>. All proceeds of causes of action received by Non-EB5 Unsecured Creditors shall be credited against the Unsecured Creditor Guarantee Payments dollar-for-dollar in chronological order. For example, if an

9

Unsecured Creditor Guarantee Payment is due in October, and Non-EB5 Unsecured Creditors receive $1,000,000 in September, EB5 will no longer be obligated to make the Unsecured Creditor Guarantee Payments due the following October ($333,333.33), January ($333,333.33), and April ($333,333.33).

8. Constructive Default; WP Parcel Condition. Notwithstanding the foregoing, in the event the Trustee does not effectuate the Trustee WP Parcel Acquisition within eighteen (18) months following the closing of the sale (a "**Constructive Default**"), the Unsecured Creditor Guarantee shall be reduced to $3,000,000. A Constructive Default shall not constitute a default by the Trustee of his obligations under this Agreement nor a default by EB5. Subject to Section 7, if the Trustee cures the Constructive Default by effectuating the Trustee WP Parcel Acquisition, EB5 shall pay the full amount ($4 million) of the Unsecured Creditor Guarantee with the Unsecured Creditor Guarantee payments resuming on a quarterly basis beginning on the last day of the month of such cure.

9. Release of Claims Against EB5. Effective upon the Court's approval of this Agreement by a final, unstayed order issued pursuant to Federal Rule of Bankruptcy Procedure 9019, the Trustee, for himself and on behalf of the Debtor and its estate (collectively, the "**Trustee Releasing Parties**") shall be deemed to release and forever discharge EB5 and its general and limited partners, agents, attorneys, affiliates, representatives, predecessors, successors, and assigns (collectively, the "**EB5 Released Parties**") from any and all manner of actions, causes of action in law or in equity, suits, debts, liens, contracts, liabilities, claims, demands, damages, losses, fees, costs, or expenses, set offs, or claims for recoupment, of any nature whatsoever, known or unknown, fixed or contingent that the Debtor or the Debtor's estate has or may have against the EB5 Released Parties from the beginning of time to the date of this Agreement relating in any way

10

to the EB5 Loan or the EB5 Prepetition Claim or any other matter relating to EB5's prepetition actions and relationship with the Debtor; *provided, however,* that the release provided under this paragraph is not a release of any rights arising under or related to this Agreement. The Trustee will take all necessary actions to enforce the Agreement.

10.      <u>Release of Claims Against the Trustee Releasing Parties</u>. The EB5 Released Parties hereby release and forever discharge the Trustee Releasing Parties and the Trustee's agents, attorneys, affiliates, representatives, successors, and assigns (together, the "**Trustee Released Parties**") from any and all manner of actions, causes of action in law or in equity, suits, debts, liens, contracts, liabilities, claims, demands, damages, losses, fees, costs, or expenses, set offs, or claims for recoupment, of any nature whatsoever, known or unknown, fixed or contingent that the EB5 Released Parties have or may have against the Trustee Released Parties from the beginning of time to the date of this Agreement other than the EB5 Prepetition Claim, the DIP Claim or any claims arising under or related to this Agreement. The foregoing release shall not be interpreted to apply to any of the Debtor's agents, attorneys, affiliates, representatives, predecessors, successors (other than the Trustee), and assigns (other than the Trustee).

11.      <u>Golf Course Operations</u>. Prior to a closing of a Sale of the Debtor's assets and no later than April 15, 2026, unless extended by mutual written agreement of the Parties, the Trustee and EB5 shall confer and jointly determine whether to open and operate the Debtor's golf course as a going concern or to maintain the property in its current condition pending disposition of the Debtor's assets. The Trustee shall implement the jointly determined course of action promptly following such determination subject to necessary court approvals. However, if the Parties cannot agree, then the Debtor's golf course will remain closed. In the event there is a shortfall in terms of the required capital to open the golf course and any revenue received from the sale of golf

memberships and seasonal passes, and EB5 agrees to open the golf course as a going concern, EB5 will fund the balance required to open the golf course. In the event the Parties determine not to open the golf course, EB5 shall fund up to $400,000 in reasonable, agreed-upon, and documented preservation and maintenance costs for the golf course property from the date of such determination through the closing of the sale of the Debtor's assets (the "**Preservation Funding**"). The Preservation Funding shall be added to and increase the DIP budget and shall constitute an advance under the DIP Loan, secured and entitled to repayment on the same terms as all other DIP advances, subject to court approval.

12. <u>PID Assumption and Assignment.</u> In connection with the closing of the sale, the Parties shall cooperate in good faith to negotiate and execute a formal assumption and assignment agreement with the PID on terms reasonably acceptable to EB5. The Trustee shall use reasonable efforts to obtain the PID's consent to such assumption, and shall cooperate in good faith with EB5 in any efforts to restructure its assumed obligations with respect to the PID.

13. <u>Boyden Farms Assumption and Assignment</u>. In the event that the subordination agreement relating to the Boyden Farms loan is determined by a final, non-appealable order of the Court to be invalid or unenforceable, EB5 shall assume all obligations arising under the Boyden Farms loan documents, and shall further have the right to assert all of the Debtor's or the Estate's defenses, if any, under the Boyden Farm loan documents. The Trustee shall use reasonable efforts to obtain the Boyden Farms lender's consent to such assumption. EB5's obligation to assume the Boyden Farms loan obligations shall arise only upon a final, non-appealable determination of subordination invalidity and execution of a formal assumption agreement with the Boyden Farms lender.

4937-6077-4300.1

14.     <u>DIP Maturity Extension</u>. The maturity date of the DIP Loan is hereby extended to the closing date of the sale of the Debtor's assets pursuant to the Bidding Procedures Motion, but in no event later than May 15, 2026, unless further extended by mutual written agreement of the Parties. The Parties agree to execute and deliver such amendments to the DIP Loan documents as are necessary to effectuate this extension within five (5) business days of the effective date of this Agreement.

15.     <u>EB5 Representations</u>. EB5 represents and warrants that the person signing this Agreement on behalf of EB5 has full power and authority to enter into this Agreement, that this Agreement is a valid and enforceable document and agreement according to its terms and conditions, and that the terms and conditions of the Agreement are fully enforceable by the Trustee against EB5.

16.     <u>Trustee Representations</u>. The Trustee represents and warrants that, subject to the approval of the Court, he has full power and authority to enter into this Agreement on behalf of the Debtor, that this Agreement is a valid and enforceable document and agreement according to its terms and conditions, and that the terms and conditions of the Agreement are fully enforceable by EB5 against the Debtor and the Trustee as the Debtor's representative.

17.     <u>Effectuation of Agreement; Court Approval</u>. The Parties agree to perform any other or further acts, and execute and deliver any other or further documents, as may be necessary or appropriate to implement this Agreement. The Parties agree that the Trustee shall seek entry of the proposed order by the Court attached to this Agreement as <u>Exhibit A</u> as soon as reasonably possible following execution of this Agreement.

18.     <u>Binding Effect</u>. Subject to the approval of the Court, this Agreement shall be binding upon each of the Parties, and upon their respective successors-in-interest and/or assigns.

4937-6077-4300.1

All representations and warranties made herein shall survive execution of this Agreement and shall at all times subsequent to the execution of this Agreement remain binding and fully enforceable.

19. Governing Law. This Agreement is made pursuant to and shall be governed and interpreted by laws of the State of Utah, without giving effect to conflict of law principles.

20. No Admission of Liability. This Agreement represents a compromise of disputed claims and shall not be construed as an admission of liability or fault by either of the Parties.

21. Construction of Agreement. This Agreement shall be construed as a whole in accordance with its fair meaning and in accordance with governing law. This Agreement has been negotiated by each of the Parties (or their respective counsel) and the language of the Agreement shall not be construed for or against any particular party.

22. Voluntary Agreement. This Agreement has been carefully read by the Parties and has been reviewed by the Parties' respective legal counsel; the contents hereof are known and understood by the Parties; and each of the Parties acknowledges that such party is under no duress or undue influence and that each of the Parties executes this Agreement as its own free and voluntary act.

23. Integration and Amendments. This Agreement shall constitute the entire agreement and understanding of and between the Parties in relation to matters described herein, and no statements, representations, inducements or promises other than as expressly set forth herein have been given or received by any of the Parties (nor by their respective agents, employees, attorneys or representatives) in return for same. All negotiations, oral conversations, statements, representations and/or agreements leading up to the execution of this Agreement are merged herewith and shall not be the basis for any legal rights, claims or defenses in relation to any litigation or otherwise. No parole or extrinsic evidence may be used to contradict any of the terms

14

of this Agreement. Any amendment to this Agreement must be in writing, signed by duly authorized representatives of the Parties hereto, and specifically state the intent of the Parties to amend this Agreement.

24.     Severability.  To the extent that any portion of this Agreement is held unenforceable by a court, tribunal or arbiter of competent jurisdiction, the remainder of this Agreement shall remain binding and enforceable provided that the primary purpose of the Agreement is not frustrated.

25.     Counterparts.  This Agreement may be executed by the Parties hereto in any number of identical counterparts, each of which, once executed and delivered in accordance with the terms of this Agreement, will be deemed an original with all such counterparts taken together constituting one and the same instrument.  Delivery by facsimile, encrypted e-mail or e-mail file attachment of any such executed counterpart to this Agreement will be deemed the equivalent of the delivery of the original executed agreement or instrument.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date and year first above written.

**EB5AN WOHALI UTAH FUND XV, LP**

Signed by:

*Michael Shoenfeld*

086F7B22463B4DC...

By:      Michael B. Schoenfeld
Its:      Authorized Signatory


**WOHALI LAND ESTATES, LLC**

DocuSigned by:

*Matt Mckinlay*

A6D02098FD41440...

By:      Matthew McKinlay
Its:      Chapter 11 Trustee

15

# EXHIBIT B

Ellen E. Ostrow  (14743)
eostrow@foley.corn
FOLEY & LARDNER LLP
95 State Street, Suite 2500
Salt Lake City, UT  84111
Telephone:  801.401.8900
*Counsel for the Chapter 11 Trustee*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Chapter 11 |
| Wohali Land Estates, LLC | Bankruptcy No. 25-24610 |
| | Hon. Peggy M. Hunt |
| Debtor. | |

## STIPULATION REGARDING CERTAIN
## MODIFICATIONS TO SETTLEMENT AGREEMENT

Matt McKinlay, in his capacity as the Chapter 11 Trustee (the ***"Trustee")*** of Wohali Land

Estates, LLC (the ***"Debtor"),*** and EB5AN Wohali Utah Fund XV, LP *("EB5"* and, together with

the Trustee, the ***"Parties"),*** by and through their respective counsel of record, hereby stipulate and

agree as follows:

1.      On April 2, 2026, the Trustee filed the *Chapter 11 Trustee's Motion, Pursuant to*

*II USC  §§ 105(a) and 363(b), and Federal Rules of Bankruptcy Procedure 6004, 9014 and 9019,*

*for Entry of an Order Approving a Settlement Agreement and Release of Claims Between the*

*Trustee, on the One Hand, and EB5AN Wohali Utah Fund SV, LP, on the Other Hand* [Dkt. No.

366] (the ***"Settlement Motion")*** pursuant to which the Trustee seeks approval of that certain

4922-1232-2462.5

*Settlement Agreement and Release of Claims* by and between the Trustee, on the one hand, and

EB5, on the other hand (such agreement, the *"Settlement Agreement").*

     2.     At the hearing with respect to the Settlement Motion which began on April 15, 2026,

the Court and other parties in interest articulated certain concerns with or questions about the

Settlement Agreement the Parties believe can be addressed by small modifications to existing

language. To maximize clarity for the Court and all stakeholders as the hearing continues and in

recognition of the possibility that further changes may be forthcoming, the Parties have determined

to reflect the changes agreed to so far solely in this stipulation (the *"Stipulation").* Upon the earlier

of the conclusion of the hearing or the Court's request, the Parties will file with the Court a final,

executed version of the Settlement Agreement and redline showing changes made to the version

filed previously.

     3.     Accordingly, the Parties stipulate as follows:

     1.     Section 3 of the Settlement Agreement shall be modified as shown below.

EB5's Acquisition of WP Parcels. The Trustee will pursue recovery of the WP Parcels in good faith, and upon the Trustee's receipt of clear marketable record title to the WP Parcels, free and clear of all adverse liens, interests, and claims, through substantive consolidation or otherwise (the **"Trustee WP Parcel Acquisition"),** EB5 agrees to acquire the WP Parcels (the **"EB5 WP Parcel Acquisition"**) at a purchase price equal to the average of two independent appraisals of the fair market value of each parcel, each conducted by a qualified MAI-certified appraiser selected by each Party respectively within 180 days of the close of the EB5 WP Parcel Acquisition. The closing of the EB5 WP Parcel Acquisition shall occur upon the earlier of (i) EB5's election or (ii) the end of the Backstop Period (as defined below). In addition, if EB5 does not close on the WP Parcels within 145 days of the Trustee WP Parcel Acquisition, EB5 shall enter into a triple net lease with the estate or Liquidating Trust, as applicable, with monthly base rent of $14,583.33 (the **"WP Rent Payments").** The WP Rent Payments shall be used by the Trustee to pay holding and carrying costs incurred by the bankruptcy estate or Liquidating Trust relating to holding the WP Parcels until the close of the EB5 WP Parcel Acquisition. Remaining WP Rent Payments and all cash proceeds actually received by the estate from the EB5 WP Parcel Acquisition shall be distributed in accordance with the waterfall set forth in Section 5 of this Agreement. The foregoing provisions regarding the EB5 WP Parcel Acquisition shall apply if and only if EB5, not another buyer, acquires the Debtor's assets pursuant to the Sale.

2

11. Section 9 of the Settlement Agreement shall be modified as shown below

<u>Release of Claims Against EB5</u>. Effective upon the Court's approval of this Agreement by a final, unstayed order issued pursuant to Federal Rule of Bankruptcy Procedure 9019, the Trustee, for himself and on behalf of the Debtor and its estate (collectively, the **"Trustee Releasing Parties"),** consistent with the releases and waivers set forth in the DIP Orders and DIP Term Sheet, shall be deemed to release and forever discharge EB5 and its general and limited partners, agents, attorneys, affiliates, representatives, predecessors, successors, and assigns (collectively, the **"EBS Released Parties")** from any and all manner of actions, causes of action in law or in equity, suits, debts, liens, contracts, liabilities, claims, demands, damages, losses, fees, costs, or expenses, set offs, or claims for recoupment, of any nature whatsoever, known or unknown, fixed or contingent that the Debtor or the Debtor's estate has or may have against the EB5 Released Parties from the beginning of time to the date of this Agreement relating in any way to the EB5 Loan or the EB5 Prepetition Claim or any other matter relating to EB5's prepetition actions and relationship with the Debtor; *provided, however,* that the release provided under this paragraph is not a release of any rights arising under or related to this Agreement; *provided, further,* that the release provided under this paragraph is not a release of any claims or causes of action the estate may bring against EB5 for allegedly violating the automatic stay by filing the *Complaint for (I) Damages Arising from Tortious Interference with Contract and Conversion of Pledged Membership Interests; (11) Avoidance and Recovery of Fraudulent Transfers Under Utah's Uniform Voidable Transactions Act; and (111) Related Relief* in Utah State Court on March 24, 2026, which alleged violations are anticipated to be ruled upon by the Court following notice and a hearing. The Trustee will oppose, and will support EB5's efforts to oppose, any efforts by other parties in interest to assert claims or causes of action released by the Debtor and its estate pursuant to this paragraph.

**SO STIPULATED:**

Dated: April 16, 2026          FOLEY & LARDNER LLP

*Isl Ellen E. Ostrow*
Ellen E. Ostrow
*Attorneys for the Chapter 11 Trustee*

**SO STIPULATED:**

Dated: April 16, 2026          RAY QUINNEY & NEBEKER P.C.

*Isl Michael R. Johnson (with permission)*
Michael R. Johnson
*Attorneys for EB5AN Wohali Utah Fund XV, LP*

3

4922-1232-2462.5

# **<u>EXHIBIT C</u>**

4912-5147-7917.1

Jason R. Naess (ISB #8407)
Assistant United States Trustee, Region 18
Matthew J. Burne (USB #18605)
Trial Attorney
UNITED STATES DEPARTMENT OF JUSTICE
Office of the United States Trustee
Washington Federal Bank Building
405 South Main Street, Suite 300
Salt Lake City, UT 84111
Telephone: (801) 524-5734
Facsimile: (801) 524-5628
E-mail: Matthew.Burne@usdoj.gov

Attorneys for Gregory M. Garvin
Acting United States Trustee, Region 19

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Case No. 25-24610 |
| WOHALI LAND ESTATES, LLC, | Chapter 11 |
| Debtor. | Hon. Peggy Hunt |

**STIPULATION RESOLVING, IN PART, UNITED STATES TRUSTEE'S LIMITED OBJECTION TO CHAPTER 11 TRUSTEE'S MOTION, PURSUANT TO 11 U.S.C. §§ 105(a) AND 363(b), AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 6004, 9014 AND 9019, FOR ENTRY OF AN ORDER APPROVING A SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BETWEEN THE TRUSTEE, ON THE ONE HAND, AND EB5AN WOHALI UTAH FUND XV, LP, ON THE OTHER HAND**

The Acting United States Trustee ("UST"), through his attorney, Matthew McKinlay (the "Trustee") and EB5AN Wohali Utah Fund XV, LP ("EB5" and together with the UST and the Trustee, the "Parties") hereby file this Stipulation resolving, in part, the UST's Limited Objection (Dkt. 241 "Limited Objection") to the Chapter 11 Trustee's Motion, pursuant to 11 U.S.C. §§

105(a) and 363(b), and Federal Rules of Bankruptcy Procedure 6004, 9014 and 9019, for entry of an Order Approving a Settlement Agreement and Release of Claims Between the Trustee, on the One Hand, and EB5AN Wohali Utah Fund XV, LP, on the Other Hand (Dkt. 366, "Settlement Motion").[1] The Parties represent as follows:

### STATEMENT OF FACTS

1. On August 8, 2025 ("Petition Date"), Wohali Land Estates, LLC ("Debtor") filed a petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101 *et seq* (the "Bankruptcy Code").[2]

2. On September 30, 2025, the UST appointed Matt McKinlay (the "Trustee") of Ampleo Turnaround and Restructuring LLC ("Ampleo") as the chapter 11 trustee. The UST also filed an application for approval of this appointment which the Court granted on October 9, 2025. (*See* Dkt. 102).

3. On April 2, 2026, the Trustee filed the Settlement Motion (Dkt. 366). The Agreement which the Trustee seeks approval of is attached at Exhibit A to the Settlement Motion (Dkt. 366 at p 26).

4. On April 13, 2026, the UST filed the Limited Objection to the Settlement Motion based on two grounds: (i) the inclusion of the **EB5 WP Parcel Acquisition** provision (Agreement § 3, Dkt. 366 at p. 33) in its current form, and (ii) the provisions of the Agreement

---

[1] Capitalized terms shall have the meanings ascribed to them in the Motion.
[2] Use of "§" or "section" herein shall refer to the applicable section of the Bankruptcy Code unless otherwise stated.

related to distributions to creditors, *i.e.,* Agreement § 5 Distribution of Proceeds, and Agreement § 6 Unsecured Creditor Guarantee (collectively the "**Agreement Distribution Provisions**", Agreement § 5 and 6, Dkt. 366 at p. 37).

5.    The basis for UST's objection to the Agreement Distribution Provisions asserted is that those provisions constitute a *sub rosa* Chapter 11 plan and therefore are improper as they have not been approved through the plan confirmation process.

6.    The Trustee and EB5 dispute the UST's position that those provisions constitute a *sub rosa* Chapter 11 plan.

7.    The Parties subsequently engaged in discussions regarding the Limited Objection and the Trustee and EB5 have agreed to modify the language of the Agreement to resolve the potential *sub rosa* issues raised by the UST in the Limited Objection.

<u>**STIPULATION**</u>

Based on the foregoing the Parties agree as follows:

8.    The Agreement § 5 shall be modified as follows:

5.    Distribution of Proceeds. All (i) cash proceeds recovered through the prosecution of the estate's causes of action, (ii) cash proceeds of the EB5 WP Parcel Acquisition, and (iii) cash proceeds of the Other Land Parcels Sales (collectively, the "**Proceeds**") shall be distributed in accordance with the provisions of the Bankruptcy Code and subject to the terms of a confirmed Chapter 11 plan or through the distribution by a Chapter 7 trustee in the event the case is converted. Except as set forth in

3

Paragraphs 3 and 6, EB5 does not hereby waive its right to seek or receive distributions from the Proceeds, as defined herein, on account of the Deficiency Claim. ~~the following order of priority, with each tier to be satisfied in full before any distribution is made to the next tier:~~

~~a. *First,* administrative costs and expenses of the Bankruptcy Estate and Liquidating Trust;~~

~~b. *Second,* the Debtor's unsecured creditors, including EB5 on account of the Deficiency Claim on a pro rata basis.~~

9. The Agreement § 6 shall be modified as follows:

6. Unsecured Creditor Guarantee. EB5 hereby guarantees, subject only to the conditions set forth in section 8 of this Agreement, that Four Million Dollars ($4,000,000) (the "Unsecured Creditor Guarantee"). shall be available to the non-EB5 Unsecured Creditors with allowed claims against the Debtor's estate (the "Non-EB5 Unsecured Creditors"), which shall be distributed in accordance with the provisions of the Bankruptcy Code and the terms of a confirmed Chapter 11 plan or by a Chapter 7 trustee in the event the case is converted. Payments made pursuant to any confirmed Chapter 11 plan or by a Chapter 7 trustee to administrative or priority claimants shall not reduce the Unsecured Creditor Guarantee. ~~subject only to the conditions set forth in section 8 of this Agreement, that non-EB5 holders of allowed general unsecured~~

4

~~claims against the Debtor's estate (the "Non-EB5 Unsecured Creditors")~~ ~~shall receive for their claims a minimum of their pro rata share of Four~~ ~~Million Dollars ($4,000,000) (the "Unsecured Creditor Guarantee").~~ Subject to section 7 of this Agreement, EB5 shall make to the Debtor's estate or Liquidating Trust, as applicable, twelve (12) equal quarterly installment payments of $333,333.33 (the "Unsecured Creditor Guarantee Payments"), commencing ninety (90) days following the closing of the sale of the Debtor's assets and continuing each quarter thereafter until 12 quarters, or three years, have passed (such period, the "Backstop Period"). The Trustee shall distribute the Unsecured Creditor Guarantee Payments to Non-EB5 Unsecured Creditors on a pro rata basis based on the face amount of their respective allowed general unsecured claims at appropriate intervals decided by the Trustee. EB5's obligation to make the Unsecured Creditor Guarantee Payments shall be secured by a standby letter of credit in the full amount of $4,000,000, issued by a financial institution reasonably acceptable to the Trustee, which EB5 shall obtain and deliver to the Trustee prior to the closing of the Sale.

WHEREFORE, the Parties respectfully request that, in the event the Court enters an order granting the Settlement Motion, that the order also approve the terms of this Stipulation and the modifications to Agreement §§ 5 and 6 as contemplated herein.

Date: April 20, 2026              ACTING UNITED STATES TRUSTEE
                                     Gregory M. Garvin

                                     By: /s/   *Matthew J. Burne*
                                   MATTHEW J. BURNE
                                   Attorney for the Acting United States Trustee

**Agreed to by:**

MATTHEW MCKINLAY
Chapter 11 Trustee

*/s/ Ellen E. Ostrow*
Ellen E. Ostrow
Foley & Lardner, LLP
*Counsel for the Chapter 11 Trustee*

RAY QUINNEY & NEBEKER, P.C.

*/s/ Michael R. Johnson*
Michael R. Johnson
*Attorneys for EB5AN Wohali Utah Fund, XV, LP*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on April 20, 2026, I caused a true and correct copy of the foregoing document to be electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating in the CM/ECF system, as noted below:

- David P. Billings        dbillings@fabianvancott.com, khaynes@fabianvancott.com
- Bryan H Booth        bryan@mountainwestlaw.com, lisa@mountainwestlaw.com
- Scott S Bridge        sbridge@keslerrust.com
- Matthew James Burne        matthew.burne@usdoj.gov, Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov ;Brittany.Dewitt@usdoj.gov
- Ryan C. Cadwallader        rcadwallader@kmclaw.com, twhite@kmclaw.com
- P. Matthew Cox        mcox@spencerfane.com, ecall@spencerfane.com;mwatson@spencerfane.com
- Michael Allen Gehret        mike.gehret@dentons.com, kim.altamirano@dentons.com
- Patricia Geary Glenn        pgearyglenn@gmail.com
- Nicholas Hagen        nhagen@rqn.com, ecasaday@rqn.com;docket@rqn.com
- Jason W. Hardin        jhardin@fabianvancott.com, sirvin@fabianvancott.com
- Carson Heninger        heningerc@gtlaw.com, carson-heninger-5642@ecf.pacerpro.com,Candy.Long@gtlaw.com
- George B. Hofmann        ghofmann@ck.law, mparks@ck.law;enilson@ck.law
- Annette W. Jarvis        jarvisa@gtlaw.com, longca@gtlaw.com
- Michael R. Johnson        mjohnson@rqn.com, docket@rqn.com;ASanchez@rqn.com;RQN@ecfalerts.com
- Penrod W. Keith        penrod.keith@dentons.com, kristin.hughes@dentons.com
- Thomas E. Kessinger        tkessinger@agutah.gov
- Justin J. Keys        justin@hlhparkcity.com, nancy@hlhparkcity.com
- Bryce L. Krieger        bryce.krieger@dentons.com
- Trevor C Lang        tclang@agutah.gov, staff@mohtrial.com
- Matt McKinlay        mmckinlay@ampleo.com
- Elijah L. Milne        eli.milne@dentons.com, deb.calegory@dentons.com,jaime.gargano@dentons.com,kristen.ivory@dentons.com
- Matt C. Osborne        matt@oblawpc.com
- Ellen E. Ostrow        eostrow@foley.com, ellen-ostrow-4512@ecf.pacerpro.com;docketflow@foley.com;geysa.peeler@foley.com;elisha.burton @foley.com

- Douglas J. Payne     dpayne@fabianvancott.com,
  lwilson@fabianvancott.com;dadamson@fabianvancott.com
- Charles Louis Pearlman     charles@hlh.law
- Mark C. Rose     mrose@rqn.com, docket@rqn.com;asanchez@rqn.com
- Jeffrey Weston Shields     jshields@rqn.com,
  5962725420@filings.docketbird.com;docket@rqn.com;ecasaday@rqn.com
- Jeremy C. Sink     jsink@kmclaw.com, mcarlson@kmclaw.com
- Abigail Jennifer Stone     abigail.stone@gtlaw.com
- Jeffrey L. Trousdale     jtrousdale@cohnekinghorn.com,
  mparks@ck.law;enilson@ck.law
- United States Trustee     USTPRegion19.SK.ECF@usdoj.gov

**Manual Notice List**

**Ampleo Turnaround and Restructuring LLC**

**Michael Begley**
Utah Attorney General's Office
1594 West North Temple
Suite 300
Salt Lake City, UT 84116

**Andrew G. Dietderich**
125 Broad Street
New York, NY 10004-2498

**Empire Turf, Inc.**
,

**Nicholas S. Hagen**
Ray Quinney & Nebeker P.C.
36 South State Street
14th Floor
Salt Lake City, UT 84111

**Justin A. Nance**
DENTONS DURHAM JONES PINEGAR P.C.
192 East 200 North, Third Floor
St. George, UT 84770

*/s/ Matthew J. Burne*

8