Michael A. Gehret (11890)
Bryce L. Krieger (19594)
**DENTONS DURHAM JONES PINEGAR P.C.**
1557 W. Innovation Way, Ste 400
Lehi, Utah 84043
Telephone: (801) 375-6600
mike.gehret@dentons.com
bryce.krieger@dentons.com

*Attorneys for Boyden Farms, LLC*

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| In re:<br><br>**WOHALI LAND ESTATES, LLC**<br><br>Debtor, | **Bankruptcy No. 25-24610**<br><br>Chapter 11<br><br>Honorable Peggy Hunt |

**BOYDEN FARMS' REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR LEAVE TO FILE FIRST AMENDED PROOF OF CLAIM**

Boyden Farms, LLC ("**Boyden Farms**"), through counsel, submits this reply memorandum in support of its Motion for Leave to File First Amended Proof of Claim (the "**Motion**") [Docket No. 653] and in response to the Trustee's Objection to the Motion (the "**Objection**") [Docket No. 664].

## I. INTRODUCTION

Boyden Farms asks the Court to permit it to amend its timely filed Proof of Claim No. 60-1 (the "**Claim**") by filing the proposed First Amended Proof of Claim (the "**Amended Claim**"). Amendment is warranted under Tenth Circuit precedent; alternatively, the deadline to file proofs of claim (the "**Bar Date**") should be equitably tolled or extended for excusable neglect. Because the Objection does not address the Motion's equitable-tolling argument, the Court may grant the Motion on that basis alone.

The Trustee does not dispute that Boyden Farms learned the facts supporting its fraud claims after the Bar Date, that Boyden Farms asserted those claims on January 15, 2026, in its adversary proceeding against the Debtor and EB5AN Wohali Utah Fund XV, LP ("**EB5**") (the "**Adversary Proceeding**"), or that he has known of those claims ever since. Nor does he address the Tenth Circuit precedent permitting amendment in these circumstances.

The Final DIP Order, the Bidding Procedures Order, the Settlement Order, and the Sale Order each contemplated final resolution of the Adversary Proceeding, including Boyden Farms' fraud claim. The Trustee obtained approval of his settlement with EB5 (the "**Settlement Agreement**") after his counsel represented: "We're not impacting the adversary proceeding, Boyden Farms' rights are preserved." *See* Settlement Hearing [Docket No. 442] at 2:18:15. Those assurances bear on both the absence of surprise and, to the extent the Trustee now invokes the settlement itself to foreclose the claims, judicial estoppel.

The Trustee makes three arguments: (1) the Amended Claim fundamentally changes the nature of the Claim; (2) unsecured creditors will be prejudiced; and (3) the delay is not excusable. Each misreads the record. First, the Amended Claim changes only the legal theory. It seeks the

same $7,564,554.83, arises from the same debt, and concerns the same collateral. Second, no creditor has relied on the Claim's original form. Boyden Farms asserted its fraud claims against the Debtor in January. The Final DIP Order, the Settlement Agreement, and the Sale Order all followed, and each preserved Boyden Farms' rights in the Adversary Proceeding. Third, the timing reflects no dilatory motive or bad faith. Boyden Farms learned the facts supporting its fraud claims only after the Bar Date. It asserted them within weeks, and it moved to amend promptly after the Trustee first raised the proof-of-claim issue on July 17, 2026. The Motion should be granted.

## II. ARGUMENT

### A. The Bar Date Should Be Equitably Tolled.

The Objection does not address the Motion's equitable-tolling argument. As such, the Court may grant relief on that ground alone. "As a court of equity, bankruptcy courts may equitably toll limitations period." *In re Geneva Steel LLC*, 389 B.R. 231, 240 (Bankr. D. Utah 2008). "[A] court, when considering equitable tolling, must consider information available to the trustee as well as information available to creditors of the estate." *Id.* Boyden Farms' discovery of the facts supporting fraud after the Bar Date, followed by its assertion of those claims in January, supports the requested relief.

Although the Objection does not address tolling, its other arguments assume that Boyden Farms knew, or should have known, the basis for its fraud claims long before it sought to amend. That premise mischaracterizes the record and requires Boyden Farms to have been clairvoyant.

First, the Trustee argues that Boyden Farms knew from the outset of the case that its claim was subordinated because the Debtor's original schedules (the "**Schedules**") [Docket No. 36] listed the claim as unsecured. That argument fails because it treats an unsecured claim as though

it were a subordinated one, and it assumes that a debtor's label reveals the reason behind it. The Schedules described an unsecured debt arising from loans for the purchase of land; they did not disclose any subordination agreement. And the Schedules were amended a month later to list Boyden Farms as a secured creditor, again without disclosing any subordination agreement. *See* Amended Schedules [Docket No. 85].

Second, the Trustee relies on his motion for post-petition financing (the "**DIP Motion**") [Docket No. 158], which stated that EB5 appeared to hold a first-priority lien. Setting aside the fact that this belief was incorrect, the Trustee's stated belief disclosed nothing about the facts behind it. He said only that he "understands" EB5 to be first based on "the EB5 loan documents and related deeds of trust," that other liens "appear to be junior," and that he "reserves all rights to object to claims." DIP Motion ¶¶ 12, 14. The DIP Motion never mentions the intercreditor and subordination agreement on which EB5 relies (the "**ICA**"), much less that Boyden Farms signed it or that it was procured by fraud. It is not reasonable to suggest that Boyden Farms should have divined that it must have signed a subordination agreement, induced by fraud, because the Trustee believed EB5's lien was senior.

As identified in the Motion, Boyden Farms was still investigating the ICA when the DIP-related deadline required it to commence the Adversary Proceeding. It learned additional facts during the DIP financing and sale proceedings and revised its fraud allegations as that investigation continued. That sequence explains why Boyden Farms' timely Claim did not include the fraud theory and why the January complaint did not mark the completion of its investigation.

Third, the Trustee relies on Dave and Marc Boyden's familiarity with the Debtor's affairs. That argument fails because it attributes knowledge to Boyden Farms through family relationships

rather than evidence. Familiarity with the Debtor's affairs does not establish that Boyden Farms knew the facts supporting its fraud claims. The specific allegations concerning Dave illustrate the distinction: Dave Boyden acted for the Debtor, not Boyden Farms, and Boyden Farms alleges that the Debtor's managers used Dave Boyden, who did not review the documents he signed, to obtain Stephen Boyden's signature on the ICA. Those allegations only evidence that Boyden Farms was defrauded, they do not establish that Boyden Farms knew of the alleged fraud before the Bar Date.

The Trustee also argues that Boyden Farms had earlier notice of his Bar Date position. That contention concerns a separate issue: notice of a procedural objection rather than knowledge of the facts supporting fraud. The Trustee relies on the affirmative defenses in his answer in the Adversary Proceeding (the "**Answer**") [Adversary Proceeding Docket No. 32]. The Second Affirmative Defense states in full: "Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel, promissory estoppel, laches, acquiescence, consent, and/or waiver." Answer at 25. This assertion of equitable defenses does not raise the statutory or legal defense the Trustee now argues. The Answer did not plead an affirmative defense stating that the claims are barred because they were not included in a proof of claim. It was not until July 17 that the Trustee first raised this argument, and even then, it was raised in passing, with only a few sentences on the topic. *See* Trustee's Response to Motion for Leave to File SAC [Adversary Proceeding Docket No. 51].

**B. Boyden Farms is entitled to amend its claim under *Unioil*'s liberal standard.**

Whether to allow an amended proof of claim turns on (1) whether the original proof of claim is amendable and (2) whether amendment should be allowed under the circumstances. *In re Unioil, Inc.*, 962 F.2d 988, 992 (10th Cir. 1992). "Late-filed amendments to proofs of claim should be treated with liberality[.]" *Id.* "Ordinarily, amendment to a proof of claim is freely permitted so

long as the claim initially provided adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable." *Id.*

The Trustee argues that the Amended Claim asserts a new claim that converts a nonrecourse claim into a recourse claim. That argument mistakes a new legal theory for a new claim. The non-recourse provision does not change the nature of the Claim. A nonrecourse provision may limit recovery on the Notes. It does not shield the Debtor from liability for its own fraud in procuring the ICA, which impaired the collateral to which that recourse was limited. Boyden Farms has suffered a single loss: nonpayment of the $7,564,554.83 owed on the Promissory Notes secured by the Trust Deeds identified in its timely Claim. The contract and fraud theories explain the same loss from two angles. The first says the indebtedness was not repaid. The second says that the Debtor fraudulently induced Boyden Farms to execute the ICA, which purports to subordinate the very lien securing that indebtedness. If enforced, the ICA stripped Boyden Farms of the collateral priority that would have satisfied the Notes. Boyden Farms seeks no additional recovery, identifies no separate economic injury, and asserts no other lending relationship. Any recovery under one theory would reduce recovery under the other.

The fact that the ICA was executed after the original loan does not make it a separate transaction. The ICA created no new debt, and the Debtor gave Boyden Farms no new consideration under it. Its only purpose and effect concerned the priority of the existing lien securing the existing debt. The ICA was therefore a modification of the secured-creditor relationship already disclosed in the Claim, not an unrelated commercial dealing. The Trustee's own Settlement Agreement treats the two as inseparable. Under it, the validity of the ICA determines whether EB5 assumes "all of the obligations under the Boyden Farms loan documents".

The Tenth Circuit asks whether an amendment refers to "the same chattels, the same consideration, and the [same] transaction" as the original claim. *LeaseAmerica Corp. v. Eckel*, 710 F.2d 1470, 1473 (10th Cir. 1983). The relevant question is whether the misrepresentation "took place in the context of the . . . transaction which formed the basis for the original proof of claim," not when it occurred. *In re Ne. Office & Com. Props., Inc.*, 178 B.R. 915, 922 (Bankr. D. Mass. 1995). The alleged fraud here concerns the same collateral, the same consideration, and the same debt.

Courts routinely permit a creditor whose proof of claim rests on contract to amend to assert fraud as an alternative theory for recovering the same debt. In *LeaseAmerica* the Tenth Circuit permitted such an amendment because it "referred to the same chattels, the same consideration, and the transaction which was the basis for the original complaint." *LeaseAmerica*, 710 F.2d 1470 at 1474; *see also In re Ne. Office & Com.*, 178 B.R. 915 at 922. The Trustee does not dispute that the Claim gave notice of its existence, its amount, and Boyden Farms' intent to hold the estate liable. Nor does he address the authorities holding that adding a fraud theory to a contract-based claim for the same debt does not change the claim's nature.

Because the Claim is amendable, the remaining question is whether amendment would cause actual prejudice. A party objecting to an amended proof of claim must show "actual prejudice." *In re Goodwin*, No. 17-12205-11, 2022 WL 2541216, at *3 (Bankr. D. Kan. July 5, 2022). The Trustee identifies no such prejudice.

Courts find prejudice when an amendment hinders resolution of the case, such as by rendering a plan infeasible or changing distributions under a confirmed plan. *See In re Stauffer*, 378 B.R. 340, 351 (Bankr. D. Utah 2007); *In re JB & Co. Chevron, LLC*, No. 19-11504j11, 2021

WL 10555717, at *9 (Bankr. D.N.M. Aug. 31, 2021). Amendments that merely change the secured and unsecured portions of a claim do not. *See Goodwin*, 2022 WL 2541216, at *3.

The Trustee's only claimed prejudice is that unsecured creditors may receive less. That is not prejudice. "[P]rejudice cannot be established merely by the fact that the estate will be required to pay a claim that it might have otherwise eluded," and "something more than mere creditor disappointment is required to preclude amendment." *In re Bagley*, 676 B.R. 1, 16 (Bankr. D.R.I. 2025) (cleaned up). Nor does amendment decide liability or allow the fraud claim. Any effect on distributions depends on Boyden Farms proving its claims, and the Trustee remains free to defend against them in the Adversary Proceeding. Creditor disappointment over a claim that may prove valid is all the Trustee identifies, and it falls well short of actual prejudice.

Nor can the Trustee claim surprise. "The overriding purpose of proofs of claim and the rules of law that require their timely submission is to provide a debtor's creditors and other parties in interest with notice of the claims against the estate." *Bagley*, 676 B.R. 1 at 16–17 (quoting *In re FTX Trading Ltd*., 669 B.R. 298, 306 (Bankr. D. Del. 2025)). That purpose has been served here. The Trustee has known about these fraud claims since January. The Final DIP Order, the Settlement Agreement, and the Sale Order each preserved Boyden Farms' rights in the Adversary Proceeding. Conforming the Claim to allegations the Trustee has known of for nine months surprises no one.

The Trustee's allocation argument fares no better. He contends that because EB5 assumed only the obligations under the Boyden Farms loan documents, a fraud recovery would fall on the general unsecured class. But that is simply the reduced-distribution argument in another form, and it shows no reliance on the Claim's omission of the fraud theory. Boyden Farms asserted its fraud claims against the Debtor on January 15, 2026, more than three months before the Trustee agreed

to settlement terms with EB5, and the Trustee assured the Court that Boyden Farms' rights were preserved. Having negotiated the settlement with full knowledge of Boyden Farms fraud claims in the Adversary Proceeding, the Trustee cannot attribute the settlement's allocation to the Claim's omission of a fraud theory, and he identifies nothing he would have done differently.

Nor did the Settlement Agreement fix any creditor's distribution. It guarantees a minimum payment of $3 million, and up to $4 million, to general non-EB5 unsecured creditors. That is a floor, not an allocation. It does not identify allowed claims or set any creditor's share. The ultimate amount available to unsecured creditors also remains unknown while the Trustee pursues avoidance actions. See Docket Nos. 643–650. With no confirmed plan, fixed distribution, or reliance interest for the amendment to disturb, the Trustee has not shown actual prejudice. Because the Claim is amendable and amendment will cause no prejudice, the Motion should be granted.

## III. The Trustee Is Judicially Estopped from Arguing that the Settlement Agreement Bars the Amended Claim.

Separately, the Trustee appears to contend that the Settlement Agreement itself forecloses the Amended Claim. That position conflicts with his representations when seeking approval of the settlement. "[J]udicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (cleaned up). Courts consider whether (1) the party's later position is clearly inconsistent with its earlier position; (2) the court accepted the earlier position; and (3) the party would derive an unfair advantage or impose an unfair detriment if not estopped. *Id.* at 750–51. Each factor favors Boyden Farms.

First, to obtain approval of the Settlement Agreement, the Trustee told the Court that "***we're not impacting the adversary proceeding, Boyden Farms' rights are preserved***." Settlement

Hearing at 2:18:15. Those representations were made in April 2026, months after Boyden Farms filed the Adversary Proceeding. Invoking the Settlement Agreement itself to extinguish those claims would contradict those assurances. Second, the Court approved the Settlement Agreement based in part on the fact that the Adversary Proceeding would not be impacted and Boyden Farms' rights would be preserved. Third, the Trustee would gain an unfair advantage by securing approval on that assurance and then invoking the same agreement to defeat the claims. Judicial estoppel therefore precludes the Trustee from using the Settlement Order to bar the Amended Claim, which seeks only to conform the Claim to the Adversary Proceeding.

**IV. Alternatively, the Deadline Should Be Extended for Excusable Neglect.**

Whether neglect is excusable is "at bottom an equitable [determination]," weighing "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

First, the amendment will cause no prejudice as discussed above. The amendment causes no prejudice because it changes neither the claim's amount nor its underlying transaction, the Trustee has long known of the fraud allegations, and no plan or distribution will be affected.

Second, the delay has had no impact on these proceedings. Boyden Farms asserted its fraud claims against the Debtor on January 15, 2026, and every significant decision since then has been made with those claims pending. The Final DIP Order, the Settlement Agreement, and the Sale Order each preserved Boyden Farms' rights in the Adversary Proceeding. When Boyden Farms raised concerns about the Settlement Agreement, the Trustee assured the Court that "Boyden

Farms' rights are preserved." Because the parties and the Court have proceeded throughout on the understanding that these claims remain live, amending the Claim to reflect them disrupts nothing.

Third, the delay was caused by Boyden Farms' lack of knowledge of the fraud, its need to file the Adversary Proceeding by a specific deadline, and the subsequent litigation in which Boyden Farms was constantly seeking to preserve its ability to litigate these claims on their merits. The intensity of that litigation and the continuing factual investigation bear on the reason for delay. This is further evidenced by the Trustee's own inability to raise this matter until July 17, despite having ample opportunity to do so. This type of delay starkly contrasts with improper delay. *See Bagley*, 676 B.R. 1 at 16 (identifying improper delay as delay caused by "the claimant's improper conduct, such as dilatory tactics, or efforts to mislead, deceive or take unfair advantage.").

Fourth, the Trustee alleges no bad faith. Seeking amendment after learning new facts, without an effort to mislead or gain an advantage, is consistent with good faith.

The Trustee's reliance on *In re Limited Gaming of America, Inc.*, 213 B.R. 369 (Bankr. N.D. Okla. 1997), does not alter this analysis. There, the IRS sought to increase its claim by more than $350,000 because of its own internal procedures. *Id*. at 374–78. Here, the amount is unchanged, and the Motion identifies a continuing investigation and intervening litigation rather than an internal processing explanation. Boyden Farms seeks only an additional theory of recovery concerning the same debt. Considered together, the *Pioneer* factors favor extending the Bar Date.

## V. CONCLUSION

For the foregoing reasons, Boyden Farms respectfully requests that the Court grant the Motion.

DATED October 23, 2026.

**DENTONS DURHAM JONES PINEGAR P.C.**

*/s/ Bryce L. Krieger*
Michael A. Gehret
Bryce L. Krieger

*Attorneys for Boyden Farms, LLC*

**CERTIFICATE OF SERVICE BY NOTICE OF ELECTRONIC FILING (CM/ECF)**

I hereby certify that on October 23, 2026, I electronically filed the foregoing with the United States Bankruptcy Court for the District of Utah by using the CM/ECF system. I further certify that the parties of record in this case, as identified below, are registered CM/ECF users.

- **David P. Billings** dbillings@fabianvancott.com, khaynes@fabianvancott.com
- **Bryan H Booth** bryan@mountainwestlaw.com, lisa@mountainwestlaw.com
- **Scott S Bridge** sbridge@keslerrust.com
- **Matthew James Burne** matthew.burne@usdoj.gov, Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov
- **Ryan C. Cadwallader** rcadwallader@kmclaw.com, twhite@kmclaw.com
- **P. Matthew Cox** mcox@spencerfane.com, ecall@spencerfane.com;mwatson@spencerfane.com
- **Michael Allen Gehret** mike.gehret@dentons.com, kim.altamirano@dentons.com
- **Patricia Geary Glenn** pgearyglenn@gmail.com
- **Jason W. Hardin** jhardin@fabianvancott.com, sirvin@fabianvancott.com
- **Carson Heninger** heningerc@gtlaw.com, carson-heninger-5642@ecf.pacerpro.com,Candy.Long@gtlaw.com
- **George B. Hofmann** ghofmann@ck.law, mparks@ck.law;enilson@ck.law
- **Annette W. Jarvis** jarvisa@gtlaw.com, longca@gtlaw.com

- **Michael R. Johnson** mjohnson@rqn.com, docket@rqn.com;ASanchez@rqn.com;RQN@ecfalerts.com
- **Penrod W. Keith** penrod.keith@dentons.com, kristin.hughes@dentons.com
- **Thomas E. Kessinger** tkessinger@agutah.gov
- **Justin J. Keys** justin@hlhparkcity.com, nancy@hlhparkcity.com
- **Bryce L. Krieger** bryce.krieger@dentons.com
- **Trevor C Lang** tclang@agutah.gov, staff@mohtrial.com
- **Matt McKinlay** mmckinlay@ampleo.com
- **Elijah L. Milne** eli.milne@dentons.com, deb.calegory@dentons.com,jaime.gargano@dentons.com,kristen.ivory@dentons.com
- **Matt C. Osborne** matt@oblawpc.com
- **Ellen E. Ostrow** eostrow@foley.com, ellen-ostrow-4512@ecf.pacerpro.com;docketflow@foley.com;geysa.peeler@foley.com;elisha.burton @foley.com
- **Douglas J. Payne** dpayne@fabianvancott.com, lwilson@fabianvancott.com;dadamson@fabianvancott.com
- **Charles Louis Pearlman** charles@hlh.law
- **Mark C. Rose** mrose@rqn.com, docket@rqn.com;asanchez@rqn.com
- **Jeffrey Weston Shields** jshields@rqn.com, 5962725420@filings.docketbird.com;docket@rqn.com;ecasaday@rqn.com
- **Jeremy C. Sink** jsink@kmclaw.com, mcarlson@kmclaw.com

- **Abigail Jennifer Stone** abigail.stone@gtlaw.com
- **Jeffrey L. Trousdale** jtrousdale@cohnekinghorn.com, mparks@ck.law;enilson@ck.law
- **United States Trustee** USTPRegion19.SK.ECF@usdoj.gov

/s/ Kim Altamirano